IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

AUDREY KALAI,                          )     CIVIL NO. 06-00433 JMS-LEK
                                       )
            Plaintiff,                 )
                                       )
      vs.                              )
                                       )
STATE OF HAWAII, DEPARTMENT            )
OF HUMAN SERVICES' HAWAII              )
PUBLIC HOUSING AUTHORITY,              )
                                       )
            Defendant.                 )
_____        )


**REPORT OF SPECIAL MASTER ON DEFENDANT'S MOTION FOR
AWARD OF ATTORNEY'S FEES AND COSTS AND
PLAINTIFF'S OBJECTIONS TO DEFENDANT'S BILL OF COSTS**

        Before the Court, pursuant to a designation by United

States District Judge J. Michael Seabright, are Defendant State

of Hawaii, Department of Human Services, Hawaii Public Housing

Authority's ("Defendant") Motion for Award of Attorneys Fees and

Costs ("Motion"), filed on September 3, 2008, and Plaintiff

Audrey Kalai's ("Plaintiff") objections to Defendant's Bill of

Costs ("Objections"), filed November 20, 2008.[1]  Defendant

_____

        [1] Defendant filed its Bill of Costs on September 19, 2008.
The Bill of Costs does not include a memorandum in support or an
affidavit, both of which are required by Local Rule 54.2(c).  The
memorandum and declarations in support of the Motion, however,
also address the Bill of Costs, and the Court will construe those
as satisfying the requirements of Local Rule 54.2(c).  On
November 20, 2008, Plaintiff filed a document entitled
"Plaintiff's Memorandum in Opposition to Defendant's Motion for
Fees and Costs and Its Bill of Costs".  To the extent that the
memorandum in opposition addresses the Bill of Costs, the Court
construes it as Plaintiff's objections to the Bill of Costs.  <u>See</u>
(continued...)

requests an award of $60,025.00 in attorney's fees, $25,612.53 in non-taxable costs, and $15,845.29 in taxable costs.  Plaintiff filed her memorandum in opposition to the Motion on November 20, 2008, and Defendant filed its reply on December 4, 2008.[2]  On December 10, 2008, Defendant filed a declaration of counsel in support of the Motion.  Plaintiff filed a declaration of counsel in response on December 15, 2008.

The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").  After reviewing the parties' submissions and the relevant legal authority, the Court FINDS and RECOMMENDS that Defendant's Motion be DENIED, and that Plaintiff's Objections be GRANTED IN PART AND DENIED IN PART.  The Court RECOMMENDS that the district judge award Defendant $2,750.00 in taxable costs.

## BACKGROUND

In 2005, Defendant approved Plaintiff, along with her daughter and minor grandson, for a three-bedroom public housing

---

[1](...continued)
Local Rule LR54.2(d).  The Court notes that the better practice is for parties to file documents associated with a Bill of Costs separately from documents associated with a motion for attorney's fees.

[2] The Court notes that Defendant filed another reply on December 5, 2008, but it appears to be identical to version filed on December 4, 2008.

unit.  At the time, Plaintiff already had substantial mobility impairments.  Plaintiff was initially assigned to unit 15B at Lanakila Homes II, Project 1013.  Unit 15B was not handicap accessible.  Plaintiff moved in on September 15, 2005, but soon requested a transfer to unit 27C in Lanakila Homes IV, which is also a three-bedroom unit, because unit 15B was dirty.  Defendant approved the transfer.

Plaintiff states that, when she moved into public housing, she purchased two grab bars, which she believed she needed for her safety.  Before she moved into unit 27C, Plaintiff requested that Defendant's Hilo office have the grab bars installed.  The office informed her that she needed to complete the required paperwork for a reasonable accommodation.  On September 30, 2005, Defendant received Plaintiff's "Certification of Need for Special Reasonable Accommodation of Special Unit," which requested wheelchair access, handle bars in the bathroom, and an accessible parking stall for unit 27C.  Defendant's compliance office approved wheelchair access to unit 27C from the parking stall and grab bars in both bathrooms.  Defendant's construction office later determined that an accessible parking stall was not possible at building 27 because of its location and steep slope.  Defendant therefore gave Plaintiff the option of moving into a different unit, although the parties dispute the exact number of different units that Defendant offered

Plaintiff.[3]  Plaintiff rejected each unit for various reasons.
For example, one of the units was in a project that was noisy and
in a dangerous neighborhood, and a unit in another project did
not have enough room for Plaintiff to maneuver in her wheelchair.
During this time, Plaintiff asserts that she continued to request
that Defendant install the grab bars she purchased in unit 27C or
allow her to install them herself.  Defendant did neither.  On
May 28, 2006, Plaintiff fell in the bathroom of unit 27C.  She
states that the towel bar came loose when she grabbed it to help
her get off the toilet.  Plaintiff states that the injuries she
suffered have had lasting adverse effects.

     During the summer of 2006, Plaintiff moved into unit
935A in Lanikila Homes I.  Defendant installed the grab bars
Plaintiff purchased before she moved in.  Plaintiff moved out of
public housing during the pendency of this action.

     Plaintiff filed her Complaint in the instant action on
August 9, 2006.  The Complaint alleges the following claims:
Defendant violated the Fair Housing Act ("FHA"), 42 U.S.C. §
3604(f)(3)(A), by refusing to allow Plaintiff to install the grab

---

[3] Plaintiff was offered one-bedroom and studio units.
According to Plaintiff, in March 2006, her daughter gave notice
that she and her son would be moving out of public housing.
Thus, Plaintiff would not need a three-bedroom unit.  Some of the
smaller units, however, were apparently offered to Plaintiff
before her daughter gave notice of her intent to vacate public
housing.  Plaintiff states that her daughter did move out in
April 2006.

bars she purchased; Defendant violated § 3604(f)(3)(B) by failing to modify its policies regarding post-construction alterations to its buildings to allow the accommodations Plaintiff requested; and Defendant was negligent or reckless in failing to either install the grab bars or allow Plaintiff to install them herself. Plaintiff sought, *inter alia*, compensatory and punitive damages, and an injunction requiring the remediation of the building to comply with the FHA.

After the parties conducted significant discovery, Defendant filed its Motion for Summary Judgment on June 30, 2008. Defendant argued that: 1) Plaintiff's request for injunctive relief was moot and she lacked standing because she rejected suitable units that Defendant offered her, Defendant finally placed her in a unit that complied with the Americans with Disabilities Act, and Defendant has policies and procedures in place which address her claim for injunctive relief; 2) Plaintiff did not demonstrate a violation of the FHA; 3) the State of Hawaii's Eleventh Amendment sovereign immunity barred Plaintiff's FHA claim for monetary damages; and 4) Plaintiff's pendent state law claims should be dismissed. Plaintiff filed her memorandum in opposition to the Motion for Summary Judgment on July 10, 2008. In the declaration she submitted with her concise statement of facts, Plaintiff stated that she intended to move out of public housing at the end of July 2008. In its July 18,

2008 reply, Defendant argued, *inter alia*, that Plaintiff's claim for injunctive relief was moot because she voluntarily moved out of public housing on July 17, 2008.  At the July 29, 2008 hearing on the Motion for Summary Judgment, Plaintiff's counsel acknowledged that Plaintiff's claim for injunctive relief was moot.

The district judge granted Defendant's motion during the hearing and issued a written order on August 20, 2008.  The district judge ruled that Plaintiff's claim for damages under the FHA was barred by the Eleventh Amendment and that Plaintiff's claim for injunctive relief was moot.  The district judge declined to exercise supplemental jurisdiction over Plaintiff's state law negligence claim.  The Clerk of the Court entered final judgment in favor of Defendant on August 20, 2008.

In the instant Motion, Defendant argues that it is entitled to its attorney's fees and non-taxable costs under the FHA because it was the prevailing party and Plaintiff's FHA damages claim was frivolous.  The FHA damages claim was not supported by the existing law or by a reasonable argument for a change in the existing law.  Defendant argues that its attorney's fees and non-taxable costs were reasonable and were necessarily incurred in this case.  Defendant also argues that it is entitled to its taxable costs and that their requested taxable costs are reasonable.

6

In her memorandum in opposition to the Motion, which also serves as her Objections, Plaintiff emphasizes that prevailing defendants in civil rights actions are only entitled to attorney's fees and costs if the action was frivolous. Plaintiff contends that her action was not frivolous because she sought injunctive relief as well as monetary relief, and an action for prospective injunctive relief is not barred by sovereign immunity.  Her claim for monetary relief sought a non-frivolous "extension of existing Eleventh Amendment law in an actively evolving area of civil rights based on Supreme Court precedents."  [Mem. in Opp. at 3.]  Further, Plaintiff argues that Defendant is not the prevailing party as to her claim for injunctive relief because the district court lost jurisdiction over that claim when it became moot.

If the Court is inclined to find that her action was frivolous, Plaintiff argues that the amount of fees and costs requested was not reasonable because Defendant could have moved for summary adjudication early on in the case.  Before Plaintiff moved out of public housing, Defendant moved for summary adjudication based on sovereign immunity as to the claim for monetary damages and lack of standing as to the claim for injunctive relief.  Defendant's standing argument was based on the fact that it had offered Plaintiff other appropriate units. Plaintiff contends that Defendant could have raised both of these

arguments at the outset of the case before it spent hundreds of hours and thousands of dollars litigating the case.  Finally, Plaintiff argues that there has been no injury to Defendant because Plaintiff has filed another, closely related, action in state court which has been expanded to address the sovereign immunity problem.  The state action encompasses all of the factual issues that arose in the instant case, and therefore Defendant can use all of the case development from the instant case in the state action.  Plaintiff argues that this unusual situation is a special factor that the Court must consider in determining whether an award of attorney's fees is warranted.

In its reply, Defendant acknowledges that awards of attorney's fees to prevailing defendants are not common.  Defendant, however, argues that attorney's fees are appropriate because Plaintiff litigated a groundless claim for monetary relief in the face of overwhelming case law regarding sovereign immunity.  Defendant emphasizes that the district judge characterized Plaintiff's argument for the extension of the FHA as "tenuous".  [Order Granting Def.'s Motion for Summary Judgment, filed 8/20/08 (dkt. no. 119), at 7.]  Defendant argues that it was required to defend itself against Plaintiff's meritless damages claim as long as Plaintiff's other claims were pending.  Defendant also asserts that costly discovery was required to defend against Plaintiff's claims because she

retained three expert witnesses, identified fifty of her health
care providers, and took three depositions herself with plans of
at least three more.  As to Plaintiff's pending state action,
Defendant argues that this is only relevant to show that "her
cause of action is a valuable asset and thus she cannot argue
that she is indigent and should not be assessed fees and costs .
. . ." [Reply at 6.]  Defendant notes that Plaintiff's counsel
has stated that Plaintiff's damages in the state action is at
least a six figure amount.  [Id.]

### DISCUSSION

### I.    Attorney's Fees and Non-taxable Costs

In actions brought by private persons under the FHA,
"the court, in its discretion, may allow the prevailing party,
other than the United States, a reasonable attorney's fee and
costs."  42 U.S.C. § 3613(c)(2).  Although § 3613(c)(2) does not
differentiate between prevailing plaintiffs and prevailing
defendants, courts have applied the standard set forth in
Christiansburg Garment Co. v. Equal Employment Opportunity
Commission, 434 U.S. 412, 421 (1978), to an award of attorney's
fees to prevailing defendants in FHA actions.  See, e.g., Bryant
Woods Inn, Inc. v. Howard County, Md., 124 F.3d 597, 606 (4th
Cir. 1997); Brooks v. Ctr. Park Assocs., 33 F.3d 585, 587 (6th
Cir. 1994); Fair Hous. Council of Or. v. Cross Water Dev., LLC,
No, C08-55755 FDB, 2009 WL 799685, at *4 (W.D. Wash. Mar. 24,

2009); <u>Pantoja-Romero v. Waterfront Apartments</u>, No. C 02-4954

JSW, 2006 WL 213755, 1 (N.D. Cal. Jan. 25, 2006).

In <u>Christiansburg</u>, the Supreme Court held "a district

court may in its discretion award attorney's fees to a prevailing

defendant in a Title VII case upon a finding that the plaintiff's

action was frivolous, unreasonable, or without foundation, even

though not brought in subjective bad faith."  434 U.S. at 421.

In so holding, the Supreme Court emphasized that

> the course of litigation is rarely predictable.
> Decisive facts may not emerge until discovery or
> trial.  The law may change or clarify in the midst
> of litigation.  Even when the law or the facts
> appear questionable or unfavorable at the outset,
> a party may have an entirely reasonable ground for
> bringing suit.

<u>Id.</u> at 422.

### A. **Prevailing Party**

A party must be "the prevailing party" in order to

obtain an award of attorney's fees and costs pursuant to §

3613(c)(2).  In <u>Buckhannon Board & Care Home, Inc. v. West</u>

<u>Virginia Department of Health & Human Resources</u>, the United

States Supreme Court addressed the issue of who is a "prevailing

party" under § 3613(c)(2) and under the Americans with

Disabilities Act of 1990 ("ADA").  <u>See</u> 532 U.S. 598 (2001).  The

Supreme Court held that its prior cases "establish that

enforceable judgments on the merits and court-ordered consent

decrees create the material alteration of the legal relationship

10

of the parties necessary to permit an award of attorney's fees."
Id. at 604 (citations and internal quotation marks omitted).

In the present case, the district judge granted summary
judgment in favor of Defendant on Plaintiff's FHA claim for
injunctive relief because the claim had become moot.  The
district declined to retain supplemental jurisdiction over
Plaintiff's state law negligence claim.  The district judge did
not rule on the merits of either of these claims and there was no
"judicially sanctioned change in the legal relationship of the
parties" in Defendant's favor on these issues.  See Buckhannon,
532 U.S. at 605.  The Court therefore FINDS that Defendant was
not the prevailing party as to Plaintiff's claim for injunctive
relief and her state law claim.[4]

The district judge granted summary judgment in favor of
Defendant as to Plaintiff's FHA claim for damages based on
sovereign immunity.  There is some dispute over whether such a
decision is a ruling on the merits.  Compare In re Elias, No. 98-
55744, 2000 WL 431589, at *1 (9th Cir. Apr. 21, 2000) ("A
dismissal for sovereign immunity, however, is based on
jurisdictional grounds; therefore, it is not a decision on the
merits for res judicata purposes[.]" (citing Lacks v. Fahmi, 623

---

[4] The Court, however, notes that the district court does
have jurisdiction to award attorney's fees because it had
jurisdiction over these claims at the outset of the case.  See
Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 837
(9th Cir. 2007).

11

F.2d 254, 256 (2d Cir. 1980))), and Galvan v. Fed. Prison Indus., Inc., 199 F.3d 461, 463 (D.C. Cir. 1999) ("Sovereign immunity questions clearly belong among the non-merits decisions that courts may address even where subject matter jurisdiction is uncertain."), with Bloomquist v. Brady, 894 F. Supp. 108, 116 (W.D.N.Y. 1995) ("A dismissal based on sovereign immunity is a decision on the merits, as it determines that a party has no cause of action or substantive right to recover against the United States."). Even if the district judge's ruling is not a decision on the merits, this Court finds that it resulted in a "judicially sanctioned change in the legal relationship of the parties". See Buckhannon, 532 U.S. at 605. Plaintiff is no longer able to pursue her FHA damages claim against Defendant. This Court therefore FINDS that Defendant is the prevailing party as to Plaintiff's claim for monetary damages under the FHA.

### B.   **Whether Plaintiff's Action was Frivolous**

Defendant argues that Plaintiff's action was frivolous because her primary claim, the FHA claim for monetary damages, was frivolous. It is generally recognized that the states are immune from claims for monetary damages under the FHA pursuant to the Eleventh Amendment. See, e.g., Sims v. Tex. Dep't of Hous. & Cmty. Affairs, Civil Action No. H-07-4511, 2008 WL 4552784, at *1 (S.D. Tex. Oct. 7, 2008); Zhu v. Gonzales, Civil Action No. 04-1408(RMC), 2006 WL 1274767, at *5 (D.D.C. May 8, 2006);

12

Sierotowicz v. State of New York Div. of Hous. & Cmty. Renewal,
No. 04-CV-3886NGGLB, 2005 WL 1397950, at *1 (E.D.N.Y. June 14,
2005); Gregory v. S. Carolina Dep't of Transp., 289 F. Supp. 2d
721, 724-25 (D.S.C. 2003).  "Plaintiff acknowledges that her
position on Eleventh Amendment and sovereign immunity constitutes
an extension of the existing law."  [Mem. in Opp. at 4.]
Although the district judge characterized Plaintiff's argument as
"tenuous", that statement alone does not require a finding that
Plaintiff's claim for monetary damages was frivolous,
unreasonable, or without foundation.

          Plaintiff's primary argument for the extension of
existing law was that: 1) the FHA must be read in pari materia
with the ADA and Title V of the Rehabilitation Act of 1973
("Rehabilitation Act"); and 2) the Supreme Court has held that
Congress abrogated state's sovereign immunity from suits brought
under Title II of the ADA.  [Pltf.'s Mem. in Opp. of Motion for
Summary Judgment, filed 7/10/08 (dkt. no. 111), at 7 (citing
Bragdon v. Abbott, 524 U.S. 624 (1998); Tennessee v. Lane, 541
U.S. 509 (2004)).]

          In Bragdon, the Supreme Court addressed the application
of the ADA to persons infected with the human immunodeficiency
virus ("HIV").  See 524 U.S. at 628.  The Supreme Court noted
that the ADA's definition of "disability" was virtually identical
to the Rehabilitation Act's definition of "handicapped

13

individual" and the FHA's definition of "handicap".  See id. at
631.  The Supreme Court stated that "Congress' repetition of a
well-established term carries the implication that Congress
intended the term to be construed in accordance with pre-existing
regulatory interpretations."  Id. (citations omitted).  The
Supreme Court noted that, prior to the enactment of the ADA,
every court addressing the issue concluded that an asymptomatic
HIV infection was considered a handicap under the Rehabilitation
Act.  Further, the Department of Housing and Urban Development's
implementing regulations for the FHA construed the definition of
handicap to include infection with HIV.  All indications were
that Congress intended to endorse this position when it enacted
the ADA.  See id. at 644-45.  Congress later amended the
Rehabilitation Act and the FHA to incorporate the ADA's "direct
threat" provision.  See id. at 649.

Other courts have also recognized the similarities
between the acts and noted that claims under all three acts may
often be analyzed together.  See, e.g., Wisconsin Cmty. Servs.,
Inc. v. City of Milwaukee, 465 F.3d 737, 746 (7th Cir. 2006) (en
banc) (noting that the FHA, ADA, and Rehabilitation Act "embrace
the concept that, in certain instances, the policies and
practices of covered entities must be modified to accommodate the
needs of the disabled"); Oconomowoc Residential Programs v. City
of Milwaukee, 300 F.3d 775, 783 (7th Cir. 2002) (noting that

"[t]he requirements for reasonable accommodation under the ADA [and Rehabilitation Act] are the same as those under the [FHA]," and citing cases); <u>Developmental Servs. of Neb. v. City of Lincoln</u>, 504 F. Supp. 2d 714, 723 (D. Neb. 2007) ("because courts have found that the requirements for a 'reasonable accommodation' are the same under the FHAA, ADA, and the Rehabilitation Act", the district court considered all of the plaintiff's claims as one); <u>Blatch ex rel. Clay v. Hernandez</u>, 360 F. Supp. 2d 595, 629-30 (S.D.N.Y. 2005) (same) (citing cases).[5]  Based on this case law, the Court finds that there is some support for Plaintiff's argument that the FHA should be read *in pari materia* with the ADA and the Rehabilitation Act.

In <u>Tennessee v. Lane</u>, the Supreme Court held that Congress abrogated the states' Eleventh Amendment sovereign immunity in Title II of the ADA, "as it applies to the class of cases implicating the fundamental right of access to the courts[.]"  541 U.S. at 533-34.  The Court notes that Title II specifically provides: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for

---

[5] The Court acknowledges, however, that the three acts are not always interpreted in an identical manner.  <u>See</u>, <u>e.g.</u>, <u>Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains</u>, 284 F.3d 442, 455-56 (3d Cir. 2002) (holding the Rehabilitation Act's requirement to engage in an "interactive process" regarding a reasonable accommodation does not apply under the FHA).

a violation of this chapter." 42 U.S.C. § 12202. The FHA does not contain a similar provision. Further, the Supreme Court has also held that states still have Eleventh Amendment immunity from suits for damages under Title I of the ADA. See Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001). However, in light of Tennessee v. Lane and the many similarities between the ADA and the FHA, this Court cannot find that Plaintiff's argument for the extension of the law on Eleventh Amendment sovereign immunity was frivolous, unreasonable, or without foundation.

This Court therefore FINDS that Defendant is not entitled to attorney's fees and costs under § 3613(c)(2) because Plaintiff's action was not frivolous, unreasonable, or without foundation. The Court RECOMMENDS that Defendant's Motion be DENIED.

## II.  **Taxable Costs**

Defendant's Bill of Costs seeks $15,845.29 in taxable costs consisting of the following:

| | |
|---|---|
| Fees for service of summons and subpoena | $   694.00 |
| Fees of the court reporter | $11,673.88 |
| Fees for witnesses | $   400.00 |
| Fees for exemplification and copies | $ 3,077.41 |
| **TOTAL** | **$15,845.29** |

[Bill of Costs at 1.]

Federal Rule of Civil Procedure 54(d)(1) states, in pertinent part, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's

fees--should be allowed to the prevailing party."  For the reasons stated *supra*, this Court finds that Defendant is the prevailing party as to Plaintiff's claim for monetary damages under the FHA, but that Defendant is not the prevailing party as to Plaintiff's claim for injunctive relief and as to Plaintiff's negligence claim.

A district court may exercise discretion in allowing or disallowing reimbursement of the costs of litigation, but it may not tax costs beyond those enumerated in 28 U.S.C. § 1920.  See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987), superseded on other grounds, 42 U.S.C. § 1988(c).  "Courts, however, are free to construe the meaning and scope of the items enumerated as taxable costs in § 1920."  Frederick v. City of Portland, 162 F.R.D. 139, 142 (D. Or. 1995) (citing Alflex Corp. v. Underwriters Lab., Inc., 914 F.2d 175, 177 (9th Cir. 1990) (per curiam)).  Section 1920 enumerates the following costs:

1.  Fees of the clerk and marshal;
2.  Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
3.  Fees and disbursements for printing and witnesses;
4.  Fees for exemplification and copies of papers necessarily obtained for use in the case;
5.  Docket fees under section 1923 of this title;
6.  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

**A.    Plaintiff's Objections**

Insofar as Plaintiff raised her objections to Defendant's Bill of Costs in the same document in which she opposed Defendant's Motion, the Court assumes that Plaintiff raises the same arguments as to both requests.  Thus, Plaintiff argues that: Defendant is not the prevailing party on all claims; Plaintiff's lawsuit was not frivolous; Defendant should have minimized its costs by moving for summary adjudication early in the litigation; and the discovery that Defendant conducted in this case can be used in the pending state action.

**1.    Partial Success**

This Court has found that Defendant was not the prevailing party as to Plaintiff's claim for injunctive relief and as to her state law claim.  The Court, however, finds that it is not necessary to apportion Defendant's request for taxable costs among these claims because there is no rule requiring courts to apportion taxable costs based on the relative success of the parties.  See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1348 (Fed. Cir. 2006).  "In fact, apportioning costs according to the relative success of parties is appropriate only under limited circumstances, such as when the costs incurred are greatly disproportionate to the relief obtained."  Id. (citing 10 James Wm. Moore et al., Moore's

Federal Practice § 54.101[1][b] (3d ed. 2006)).  The Court
therefore RECOMMENDS that the district judge DENY this objection.

### 2.   Whether Plaintiff's Action was Frivolous

This Court has already found that Plaintiff's action
was not frivolous.  This alone, however, is not sufficient
grounds to overcome Rule 54(d)(1)'s presumption in favor of
awarding taxable costs to the prevailing party.  See Russian
River Watershed Prot. Comm. v. City of Santa Rosa, 142 F.3d 1136,
1144 (9th Cir. 1998).  The Court therefore RECOMMENDS that the
district judge DENY this objection.

### 3.   Failure to Limit Costs

Plaintiff complains that Defendant could have moved for
summary adjudication as to Defendant's sovereign immunity and as
to Plaintiff's lack of standing early in the litigation without
incurring significant costs in this case.  Plaintiff argues that
Defendant is not entitled to its full costs because it failed to
limit its costs.  Plaintiff, however, cites no legal authority in
support of this proposition.  The Court therefore RECOMMENDS that
the district judge DENY this objection.  The Court, however, will
address whether the requested costs are compensable under the
applicable standards.

### 4.   Pending State Action

Plaintiff also argues that the Court should consider
the fact that Defendant has suffered no prejudice in this case

because all of the discovery that Defendant conducted can be used in the pending state action.  Again, Plaintiff cites no legal authority for this proposition.  This Court therefore RECOMMENDS that the district judge DENY this objection.

### B.    Other Cost Requests

Although Plaintiff did not raise other objections to Defendant's Bill of Costs, insofar as this Court cannot tax costs beyond those enumerated in § 1920, see Crawford Fitting, 482 U.S. at 441-42, this Court must review Defendant's individual requests to determine if they are taxable.

### 1.   Service of Process

Defendant requests taxation of the following expenses for the service of subpoenas:

| Invoice Date | Witnesses | Amount |
|---|---|---|
| 10/22/07 | David Seriguchi, M.D. | $ 35.00 |
| 10/24/07 | Duglas B. Hiler, M.D.; Lyn Lam, M.D.; North Hawaii Community Hospital; Waimea Medical Associates; Peter Gregg, M.D.; Jed Groom, M.D. | $125.00 |
| 10/30/07 | Robert Young, M.D.; Kona Kohala Medical Associates | $ 45.00 |
| 10/31/07 | Custodians of Records for: James F. Pierce, M.D.; Jeffrey Lee, M.D.; Straub Clinic & Hospital; Kuakini Medical Center | $165.00 |
| 11/14/07[6] | Peter Matsuura, M.D.; Edward Gutteling, M.D.; Don Matsuura, M.D.; Rick Carpenter, M.D.; Ernest Bade, M.D. | $205.00 |
| 12/10/07 | Custodian of Records, Castle Medical Center | $ 23.00 |
| 12/21/07 | Custodian of Records, Queen's Medical Center | $ 17.00 |

---

[6] The Court notes that Defendant only included page 2 of this two-page invoice and that five other witnesses were apparently listed on page 1.  The service rate is $20.00 each. [Exh. 1 to Bill of Costs at 6.]

| | | |
|---|---|---|
| 12/24/07 | Hawaii Physical Therapy & Chiropractic Clinic, Inc. | $ 25.00 |
| 3/6/08 | Custodian of Records, Hawaii Disability Rights Center | $ 15.00 |
| 3/26/08 | Hawaii County Police Department | $ 20.00 |
| 5/2/08 | Custodian of Records, Emergency Medical Services Systems Branch, State of Hawaii | <u>$ 19.00</u> |
| | **TOTAL** | **$694.00** |

[Exh. 1 to Bill of Costs.]  Defendant provided invoices for each expense.  [<u>Id.</u> at 2-12.]

"Fees for the service of process and service of subpoenas by someone other than the marshal are allowable, to the extent they are reasonably required and actually incurred."  Local Rule LR54.2(f)1.  Defendant has established that its service of process expenses were actually incurred.  Defendant, however, has not provided sufficient evidence that all of these expenses were reasonably required.

First, the May 2, 2008 invoice for the Emergency Medical Services Systems Branch is apparently for <u>McCauley v. Inouye, et al.</u>, CV 07-01-206K, not the instant case.  [Exh. 1 to Bill of Costs at 12.]  Thus, it appears that this expense was not reasonably required for the instant case.

The majority of the persons and entities served are health care providers.  In the Motion, Defendant states that "Plaintiff listed over 50 medical care providers[.]"  [Mem. in Supp. of Motion at 1.]  Defendant also intended to call the custodians of records of Plaintiff's various health care providers as witness at trial.  [Def.'s Final Pretrial Statement,

filed 1/29/08 (dkt. no. 61), at 5.]  Thus, this Court would be inclined to find that costs to subpoena Plaintiff's health care providers were reasonably required in this case.  The Court, however, cannot find that specific costs are taxable unless there is evidence in the record that Plaintiff was in fact a patient of the particular care provider subpoenaed.

Ernest Bade, M.D., was apparently Plaintiff's primary physician during the period at issue in this case.  See, e.g., Pltf.'s Final Pretrial Stat., filed 1/30/08 (dkt. no. 64), at 3 (listing Dr. Bade as a witness to be called regarding "how Ms. Kalai was before and after her injury").  Plaintiff was also a patient of Edward Gutteling, M.D., and she was treated at Queen's Medical Center.  [Exh. 4 to Bill of Costs at 3, 7, 9, 11.]  The Court therefore FINDS that Defendant's costs to subpoena these witnesses are taxable.

The November 14, 2007 invoice for $205.00 was apparently to subpoena ten witness in the Hilo area, including Dr. Bade and Dr. Gutteling, at $20.00 each, with a $5.00 mileage fee.  [Exh. 1 to Bill of Costs at 6.]  The Court therefore finds that $45.00 of this invoice is attributable to the service of Dr. Bade and Dr. Gutteling.

Hawaii Disability Rights Center assisted Plaintiff in her attempts to work with Defendant to obtain either the accommodation of her current unit or a suitable alternative unit.

22

[Def.'s Concise Stat. of Facts in Supp. of Its Motion for Summary Judgment, filed 6/30/08 (dkt. no. 109), Decl. of Karen Kelly at ¶ 18.]  This Court therefore finds that Defendant's costs to subpoena the Hawaii Disability Rights Center were reasonably required in this case.

The Court FINDS that the following service of process costs are taxable:

| | | |
|---|---|---|
| 11/14/07 | Edward Gutteling, M.D.; Ernest Bade, M.D. | $45.00 |
| 12/21/07 | Custodian of Records, Queen's Medical Center | $17.00 |
| 3/6/08 | Custodian of Records, Hawaii Disability Rights Center | $15.00 |
| | **Total** | **$77.00** |

The Court finds, based upon the existing record, that Defendant has not established that the remainder of its service of process costs were reasonably necessary for this case.  The Court cannot confirm that Plaintiff was a patient of the other health care providers and this Court cannot determine why it was necessary to subpoena the Hawaii County Police Department.  This Court therefore FINDS the remainder of Defendant's service of process costs is not taxable.

## 2. <u>Transcripts</u>

Defendant requests taxation of the following expenses for deposition transcripts:

| Invoice Date | Witnesses | Amount[7] |
|---|---|---|
| 4/10/07 | Original & 1 copy - Dr. Ernest Bade deposition on 3/22/07 | $ 221.47 |
| 4/16/07 | Sheriff, postage & copy costs for Bade | $ 54.24 |
| 4/25/07 | Includes 4/10/07 and 4/16/07 invoices | $ 315.71 |
| 11/6/07 | 11/2/07 depositions of Cindy Biaser (Rick Carpenter); Makala Matsuyama (Edward Gutteling); Dawn Miyashiro (Hilo Medical Center); Kay Yoshioka (Robert Irvine, M.D.); Crystal Yarbrough (Peter Matsuura); 11/5/07 deposition of Chanelle Chock (Straub) | $ 1362.36 |
| 11/6/07 | Lyn Ednilao (Kaiser Permanente) - 11/6/07 | $ 266.70 |
| 11/13/07 | Mabel Acevedo (Ernst Bade) - 11/6/07; Shanell Crisafi (North Hawaii Community Hospital) | $ 532.04 |
| 12/18/07 | repeat of 11/6/07 invoice | $ 1362.36 |
| 12/24/07 | Julie Kassebeer (Castle Medical Center) | $ 395.03 |
| 12/28/07 | Jacqueline Lee (Hawaii Physical Therapy & Chiropractic Clinic, Inc.) | $ 263.14 |
| 1/7/08 | Laureen Shoji (Queens Medical Center) | $ 201.73 |
| 1/23/08 | Expedited Transcript of Plaintiff - 1/17/08 | $ 1158.01 |
| 2/4/08 | Tammy Jo Passmore, Karen J. Kelly, Donald Edward Abdul, Plaintiff - all 1/18/08 | $ 414.23 |
| 2/14/08 | Expedited Trans. of Ernest Bade - 2/11/08 | $ 912.54 |
| 2/21/08 | Stephanie Wong - 2/11/08 | $ 509.21 |
| 2/22/08 | Waley Kwock - 2/7/08 | $ 288.58 |
| 2/26/08 | sheriff, postage & copy costs advanced for Ernest Bade - 2/11/08 deposition | $ 67.85 |
| 3/5/08 | Dennis Sueo Nakamoto - 2/14/08 | $ 230.33 |
| 3/12/08 | Judith Taylor (Hawaii Disability Rights Center) - 3/12/08 | $ 240.94 |
| 3/25/08 | second copy of Wong 2/11/08 deposition | $ 43.72 |
| 3/26/08 | copy costs advanced for Plaintiff, David Wong & Stephanie Wong - 3/27/08 depositions | $ 19.48 |
| 4/7/08 | Randal Ishii (Hawaii County Police Dept.) - 4/4/08 | $ 489.11 |
| 4/8/08 | Plaintiff & David Wong - 3/27/08 | $ 849.42 |
| 4/23/08 | copy costs advanced for Plaintiff & Stephanie Wong - 4/18/08 depositions | $ 17.59 |
| 4/23/08 | sheriff, postage & copy costs advanced for Harriet Muntz, Diane Samper, Adelbert Winn, Dolores Winn - 3/27/08 depositions | $ 41.88 |

---

[7] The Court notes that some of the invoices included witnesses fees.  Defendant's summary adjusted the invoice totals to exclude the witness fees.  [Exh. 2 to Bill of Costs at 1.]

24

| | | |
|---|---|---|
| 5/5/08 | Stephanie Wong – 4/18/08 | $ 1073.22 |
| 5/29/08 | custodian of records for New Federal Building – 5/21/08 | $  305.29 |
| 6/12/08 | postage & copy costs advanced for Muntz, Samper, A. Winn, & D. Winn – 4/14/08 depos. | $   37.70 |
| | **TOTAL** | **$11,673.88** |

[Exh. 2 to Bill of Costs.]  Defendant provided invoices for each

of these expenses.  [Id. at 2-28.]

Local Rule 54.2(f)2. provides, in pertinent part:

> The cost of a stenographic and/or video original
> and one copy of any deposition transcript
> necessarily obtained for use in the case is
> allowable.  A deposition need not be introduced in
> evidence or used at trial, so long as, at the time
> it was taken, it could reasonably be expected that
> the deposition would be used for trial
> preparation, rather than mere discovery.

### a.   Dr. Bade

Insofar as he was Plaintiff's primary physician, the

Court finds that the deposition transcripts of Dr. Bade and his

custodian of records were necessarily obtained and reasonably

expected to be for trial preparation.  The cost of the original

and one copy of their deposition transcripts is therefore

taxable.

Defendant claims $221.47 for the original and one copy

of the transcript of Dr. Bade's March 22, 2007 deposition.  [Exh.

2 to Bill of Costs at 2 (4/10/07 invoice).]  The Court finds that

this cost is taxable.

Defendant claims $912.54 for the original and one copy

of the expedited transcript for Dr. Bade's February 11, 2008

deposition.  [Exh. 2 to Bill of Costs at 14.]  Expedited copies are only taxable if, for example, they were "necessary because the transcript was essential for questioning in other depositions to follow[.]"  See United States v. Davis, 87 F. Supp. 2d 82, 90 (D.R.I. 2000).  Defendant has not established that it needed the transcript of Dr. Bade's February 11, 2008 deposition on an expedited basis.  Thus, although the cost of the deposition transcript itself is taxable, any additional costs for the expedited services are not.  The Court is unable to determine how much of the invoice is attributable to expedited fees.  This Court, however, is inclined to allow Defendant to submit a supplemental declaration and/or supporting document justifying this cost.  Defendant advisably should exclude any expedited fees unless it can establish that the expedited services were necessary under the terms of Local Rule 54.2(f)2.

In addition, Defendant seeks $54.24 in sheriff's fees, postage, and copying costs advanced for Dr. Bade's March 22, 2007 deposition, and $67.85 in sheriff's fees, postage, and copying costs advanced for his February 11, 2008 deposition.  [Exh. 2 to Bill of Costs at 3 (4/16/07 invoice), 17.]  These costs are not taxable under Local Rule 54.2(f)2.

The custodian of Dr. Bade's records, Mabel Acevedo, was deposed on November 6, 2007.  Defendant seeks $532.04 for Ms. Acevedo's deposition and the deposition of the custodian of

records for North Hawaii Community Hospital.  [Id. at 7.]  This Court cannot determine what portion of the invoice is attributable to Ms. Acevedo's deposition.  The Court, however, is inclined to allow Defendant to submit a supplemental declaration and/or supporting document allocating the costs.

Defendant also submitted an invoice dated April 25, 2007, which repeats the amount reflected in the 4/10/07 invoice and the 4/16/07 invoice, plus a witness fee that Defendant excluded from the 4/16/07 invoice.  [Exh. 2 to Bill of Costs at 4.]  Insofar as this request is duplicative, this Court finds that it should be denied.

### b.    Other Health Care Providers

First, this Court cannot find that a health care provider's deposition was necessarily obtained and reasonably expected to be used for trial preparation if this Court cannot confirm that Plaintiff was a patient of that care provider.  As discussed, *supra*, the record establishes that Plaintiff was a patient of Dr. Gutteling and the Queen's Medical Center.  There is also evidence that Plaintiff was a patient of the Hilo Medical Center.  [Exh. 4 to Bill of Costs at 4-5.]  The Court therefore finds that the depositions of Dr. Gutteling, the Queen's Medical Center, and the Hilo Medical Center were necessarily obtained.  Defendant's counsel states in his declaration that "the deposition transcripts . . . were necessarily obtained for use in

27

trial preparation and motion practice." [Motion, Decl. of
Reginald K. T. Yee at ¶ 5.] In light of the fact that Plaintiff
had over fifty health care providers, counsel's statement alone,
however, is not enough to establish that these depositions were
reasonably expected to be used for trial preparation and not for
mere discovery. It appears that Defendant deposed a significant
number of the fifty care providers, and it is reasonable to
expect that some of these would be merely for discovery and not
necessarily for trial. Except for Dr. Bade, this Court cannot
determine from the existing record which of the depositions of
medical care providers were reasonably expected to be used for
trial. This Court therefore finds that all of the depositions
related to health care providers, with the exception of those
related to Dr. Bade, are not taxable.

### c.   Plaintiff and Her Family

Plaintiff's depositions were clearly necessary for
trial preparation and were not for mere discovery. Plaintiff was
deposed on January 17, 2008, January 18, 2008, and March 27,
2008. [Exh. 2 to Bill of Costs at 12-13, 23.] Stephanie Wong is
Plaintiff's daughter and David Wong is Plaintiff's grandson.
They lived with Plaintiff during most of the period at issue.
Stephanie Wong was deposed on February 11, 2008 and April 18,
2008, and David Wong was deposed on March 27, 2008. [Id. at 15,
23, 26.] This Court finds that their depositions were necessary

and reasonably expected to be for trial preparation.  Thus, the costs of the original and one copy of the depositions of Plaintiff, Stephanie Wong, and David Wong are taxable.

Defendant seeks $1,158.01 for the original and one copy of the expedited transcript of Plaintiff's January 17, 2008 deposition.  [Id. at 12.]  Defendant has not established that the expedited service for this transcript was necessary, and therefore any expedited fees are not taxable.  This Court is not able to discern which portion of the request is attributable to the expedited fees.  The Court, however, is inclined to allow Defendant to submit a supplemental declaration and/or supporting document on this issue.

Plaintiff was deposed on January 18, 2008, and that deposition transcript is billed together with three others on the February 4, 2008 invoice.  The February 4, 2008 invoice does not allocate the total charge among the four deposition transcripts. This Court will therefore address Plaintiff's January 18, 2008 deposition transcript infra, in conjunction with the three other depositions transcripts included therein.

Defendant seeks $509.21 for the original and one copy of the transcript of Stephanie Wong's February 11, 2008 deposition.  [Id. at 15.]  The Court finds that this item is taxable.  Defendant also seeks $43.72 for a second copy of this transcript.  [Id. at 20.]  The second copy is not taxable because

Local Rule 54.2(f)2. only allows for the taxation of the cost of the original and one copy.

Defendant seeks $849.42 for the originals and one copy each of the transcript of Plaintiff's and David Wong's March 27, 2008 depositions.  [Id. at 23.]  Defendant also seeks $1,073.22 for the original and one copy of the transcript of Stephanie Wong's April 18, 2008 deposition.  [Id. at 26.]  The Court finds that these items are taxable.

In addition, Defendant seeks $19.48 in copying costs advanced for the March 27, 2008 depositions, and $17.59 in copying costs advanced for the April 18, 2008 deposition.  [Id. at 21, 24.]  These costs are not taxable under Local Rule 54.2(f)2.

### d.   Depositions of Defendant's Witnesses

On January 18, 2008, the parties conducted the depositions of Tammy Jo Passmore, Karen J. Kelly, and Donald Abdul.  [Id. at 13.]  Ms. Passmore is Public Housing Supervisor and Ms. Kelly is a Public Housing Specialist II. Mr. Abdul is a retired maintenance foreman.  Each was a percipient witness who Defendant expected to testify at trial regarding what they did and observed in this matter.[8]  [Def.'s

---

[8] The Court notes that a witness need not testify at trial in order for his or her deposition to be reasonably anticipated for trial preparation.  A party's intent to call a witness at trial, however, is strong evidence that the party reasonably
(continued...)

30

Final Pretrial Stat., filed 1/29/08 (dkt. no. 61), at 4-5.]  The Court therefore finds that their deposition transcripts were necessarily obtained and were reasonably expected to be for trial preparation.  Defendant seeks $414.23 for one copy each of Ms. Passmore's, Ms. Kelly's, Mr. Abdul's, and Plaintiff's January 18, 2008 deposition.  [Exh. 2 to Bill of Costs at 13.] The Court finds that these items are taxable.

### e.  **Depositions of Plaintiff's Witnesses**

Plaintiff's counsel conducted the depositions of Sueo Nakamoto, the architect of the housing project where Plaintiff resided, and Waley Kwock, the contractor for the housing project. [Pltf.'s Separate & Concise Stat. of Facts in Supp. of Pltf.'s Opp. to Def.'s Motion for Summary Judgment, filed 7/10/08 (dkt. no. 112), Decl. of Lunsford Dole Phillips at ¶ 2.]  Plaintiff intended to call both witnesses at trial.  [Pltf.'s Final Pretrial Stat., filed 1/30/08 (dkt. no. 64), at 3.]  Based on these representations and this Court's knowledge of the case, this Court finds that Mr. Nakamoto's and Mr. Kwock's deposition transcripts were necessarily obtained and were reasonably expected to be for trial preparation.

Defendant seeks $288.58 for one copy of Mr. Kwock's February 7, 2008 deposition transcript, and $230.33 for one copy

---

[8](...continued)
anticipated that the deposition would be for trial preparation and not merely for discovery.

of Mr. Nakamoto's February 14, 2008 deposition transcript.  [Exh. 2 to Bill of Costs at 16, 18.]  The Court finds that these items are taxable.

### f.   Other Witnesses

Defendant seeks $240.94 for the original and one copy of the March 12, 2008 deposition transcript of Judith Taylor of the Hawaii Disability Rights Center.  [Id. at 19.]  For the reasons stated *supra*, this Court finds that Ms. Taylor's deposition transcript was necessarily obtained and reasonably expected to be for trial preparation.  The Court finds that this item is taxable.

Defendant also seeks: $489.11 for the April 4, 2008 deposition transcript of Randal Ishii of the Hawaii County Police Department; and $305.29 for the May 21, 2008 deposition transcript of the custodian of records for the New Federal Building.  [Id. at 22, 27.]  Based on the existing record, this Court is not able to discern what roles the Hawaii County Police Department and the New Federal Building played in the instant case.  This Court cannot find that these deposition transcripts were necessarily obtained in this case.  These items therefore are not taxable.

Finally, Defendant seeks $41.88 in sheriff fees, postage, and copying costs advanced for the March 27, 2008 depositions of Harriet Muntz, Diane Samper, Adelbert Winn, and

Dolores Winn.  [<u>Id.</u> at 25.]  In addition, Defendant seeks $37.70 in postage and copying costs advanced for the April 14, 2008 depositions of these four witnesses.  [<u>Id.</u> at 28.]  Even assuming *arguendo* that these witnesses' deposition transcripts were necessary for trial preparation, the requested costs are not taxable under Local Rule 54.2(f)2.

### g.   <u>Summary of Deposition Costs</u>

This Court therefore FINDS that the following costs for deposition transcripts are taxable:

| | | |
|---|---|---|
| 4/10/07 | Dr. Ernest Bade – 3/22/07 | $  221.47 |
| 2/4/08 | Tammy Jo Passmore, Karen J. Kelly, Donald Edward Abdul, Plaintiff – all 1/18/08 | $  414.23 |
| 2/21/08 | Stephanie Wong – 2/11/08 | $  509.21 |
| 2/22/08 | Waley Kwock – 2/7/08 | $  288.58 |
| 3/5/08 | Dennis Sueo Nakamoto – 2/14/08 | $  230.33 |
| 3/12/08 | Judith Taylor (Hawaii Disability Rights Center) – 3/12/08 | $  240.94 |
| 4/8/08 | Plaintiff & David Wong – 3/27/08 | $  849.42 |
| 5/5/08 | Stephanie Wong – 4/18/08 | <u>$1,073.22</u> |
| | **TOTAL** | **$3,827.40** |

This Court is inclined to allow Defendant to submit supplemental declarations and/or supporting documents for the following deposition transcripts: Mabel Acevedo - November 6, 2007; Plaintiff - January 17, 2008; and Dr. Ernest Bade - February 11, 2008.  The Court FINDS that the remainder of Defendant's request for deposition transcript costs are not taxable.

### 3.   <u>Witness Fees</u>

Defendant seeks a total of $400.00 in witness fees. [Bill of Costs at 1.]  Defendant seeks witness fees of $40.00

33

each for the following witnesses: Castle Medical Center, Hawaii Physical Therapy & Chiropractic Clinic, Queen's Medical Center, Hawaii Disability Rights Center, David Wong, and Hawaii County Police Department.  Defendant also seeks $80.00 in witness fees each for Ernest Bade and Stephanie Wong.  [Id. at 2-3.] Defendant included invoices for these witness fees, which were advanced by the various court reporting entities that recorded the depositions.  [Exh. 3 to Bill of Costs.]

Local Rule 54.2(f)3. states: "Per diem, subsistence, and mileage payments for witnesses are allowable to the extent reasonably necessary and provided for by 28 U.S.C. § 1821. Unless otherwise provided by law, fees for expert witnesses are not taxable in an amount greater than that statutorily allowable for ordinary witnesses."  For the reasons stated supra, this Court finds that the witness fees for the Queen's Medical Center, the Hawaii Disability Rights Center, David Wong, Stephanie Wong, and Dr. Ernest Bade were reasonably necessary in this case.  The requested witness fees for these witnesses comply with the statutory limitation.  See § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance.").  The requested witness fees for these witnesses are therefore taxable.

For the reasons stated supra, this Court cannot find that the witness fees for the Castle Medical Center, the Hawaii Physical Therapy & Chiropractic Clinic, and the Hawaii County

34

Police Department were reasonably necessary in this case.  The

Court therefore finds that they are not taxable.

     This Court FINDS that the following witness fees are

taxable:

| | |
|---|---|
| Ernest Bade | $ 80.00 |
| Queen's Medical Center | $ 40.00 |
| Hawaii Disability Rights Center | $ 40.00 |
| David Wong | $ 40.00 |
| Stephanie Wong | $ 80.00 |
| **Total** | **$280.00** |

The Court further FINDS that the remainder of Defendant's request

for witness fees is not taxable.

    **4.**  **Copying**

    Defendant seeks a total of $3,077.41 in copying costs.

[Bill of Costs at 1.]  Defendant's copying costs consist of the

following:

| | | |
|---|---|---|
| 03-28-07 | E. BADE, M.D. (RECORDS) | 182.00 |
| 10-22-07 | EDWARD GUTTELING, M.D. (RECORDS) | 25.00 |
| 10-26-07 | HILO MEDICAL CENTER (RECORDS) | 34.00 |
| 10-26-07 | HILO MEDICAL CENTER (RECORDS) | 449.00 |
| 10-29-07 | E. BADE, M.D. (RECORDS) | 237.00 |
| 11-01-07 | EDWARD GUTTELING, M.D. (RECORDS) | 25.00 |
| 11-02-07 | INFORMATION MANAGEMENT PARTNERS (COPYING)[9] | 106.81 |
| 12-01-07 | EDWARD GUTTELING, M.D. (RECORDS) | 25.00 |
| 12-19-07 | INTEGBUSINESS (COPYING)[10] | 478.63 |
| 01-04-08 | INFORMATION MANAGEMENT PARTNERS | 17.80 |

---

    [9] This invoice is for the copying of documents subpoenaed from Straub Clinic & Hospital.  [Exh. 4 to Bill of Costs at 8.]

    [10] This invoice is for the copying of ER and IP/OP records on microfilm acquired by subpoena.  [Exh. 4 to Bill of Costs at 10.]

```
                       (COPYING)[11]
       02-07-08   PROFESSIONAL IMAGE (COPYING)[12]   597.17
       04-22-08   E. BADE, M.D. (RECORDS)             900.00

                                                     3077.41
```

[Exh. 4 to Bill of Costs at 1.]  Defendant provided invoices for

each of these items.  [Id. at 2-13.]  Defendant's counsel states

that the "photocopies of the documents in questions (sic) were

necessarily obtained for use in trial preparation and motion

practice."  [Motion, Decl. of Reginald K. T. Yee at ¶ 5.]

       Local Rule 54.2(f)4. states:

       The cost of copies necessarily obtained for use in
       the case is taxable provided the party seeking
       recovery submits an affidavit describing the
       documents copied, the number of pages copied, the
       cost per page, and the use of or intended purpose
       for the items copied.  The practice of this court
       is to allow taxation of copies at $.15 per page or
       the actual cost charged by commercial copiers,
       provided such charges are reasonable.  The cost of
       copies obtained for the use and/or convenience of
       the party seeking recovery and its counsel is not
       allowable.

       The February 7, 2008 invoice from Professional Image

does not state what documents were copied or where the original

documents came from.  [Exh. 4 to Bill of Costs at 12.]  Without

this information, the Court cannot determine whether the copies

---

       [11] This invoice is for the retrieval and copying of
Plaintiff's medical records at Queens Medical Center.  [Exh. 4 to
Bill of Costs at 11.]

       [12] This invoice does not state what documents were copied.
[Exh. 4 to Bill of Costs at 12.]

were necessarily obtained for use in the case.[13]  The Court

therefore finds that this item is not taxable.

     The remaining invoices are for the copying of

Plaintiff's medical records.  As noted *supra*, the record shows

that Plaintiff was a patient of Dr. Bade, Dr. Gutteling, the Hilo

Medical Center, and the Queen's Medical Center.  The Court finds

that Defendant's copying costs to obtain records from these

health care providers were reasonably necessary in this case and

the copies were not merely for the convenience of counsel or

Defendant.  The Court therefore finds that these items are

taxable.

     The November 2, 2007 invoice from Information

Management Partners was for the copying of medical records

subpoenaed from Straub Clinic & Hospital, and the December 19,

2007 invoice from Integbusiness was for the copying of ER and

IP/OP records on microfilm.  [Id. at 8, 10.]  This Court cannot

confirm that Plaintiff was a patient at these institutions.  The

Court therefore finds that these items are not taxable.

     This Court FINDS that the following copying costs are

taxable:

```
03-28-07  E. BADE, M.D.                    182.00
10-22-07  EDWARD GUTTELING, M.D.            25.00
```

_____

     [13] The Court notes that Defendant's Motion purports to
include an itemized list of costs and nontaxable expenses in
Exhibit 2.  [Motion, Decl. of Reginald K.T. Yee at ¶ 5.]  There
is, however, no Exhibit 2 attached to the Motion.

```
10-26-07   HILO MEDICAL CENTER                    34.00
10-26-07   HILO MEDICAL CENTER                   449.00
10-29-07   E. BADE, M.D.                         237.00
11-01-07   EDWARD GUTTELING, M.D.                 25.00
12-01-07   EDWARD GUTTELING, M.D.                 25.00
01-04-08   INFORMATION MANAGEMENT PARTNERS        17.80
04-22-08   E. BADE, M.D.                         900.00
                                TOTAL      $1,894.80
```

The Court further FINDS that the remainder of Defendant's request for copying costs is not taxable.

### 5. Summary of Taxable Costs

The Court FINDS that the following costs are taxable:

```
Fees for service of summons and subpoena    $   77.00
Fees of the court reporter                  $3,827.40
Fees for witnesses                          $  280.00
Fees for exemplification and copies         $1,894.80
                                TOTAL       $6,079.20
```

The Court further FINDS that the remainder of Defendant's costs are not taxable.  The Court, however, is inclined to allow Defendant to submit supplemental materials regarding Ms. Acevedo's November 6, 2007 deposition, Plaintiff's January 17, 2008 deposition, and Dr. Bade's February 11, 2008 deposition.

### C. Adjustment to Award of Costs

A court need not give specific reasons for its decision to award taxable costs; it need only find that the reasons for denying costs do not overcome the presumption in favor of an award of taxable costs.  See Save Our Valley v. Sound Transit, 335 F.3d 932, 945 (9th Cir. 2003).  The Ninth Circuit, however, has also held that

in the rare occasion where severe injustice will
result from an award of costs (such as the
injustice that would result from an indigent
plaintiff's being forced to pay tens of thousands
of dollars of her alleged oppressor's legal
costs), a district court abuses its discretion by
failing to conclude that the presumption has been
rebutted.

Id. (discussing Stanley v. Univ. of S. Cal., 178 F.3d 1069 (9th

Cir. 1999)).   In Stanley, the Ninth Circuit held that the

district judge abused its discretion in denying a losing

plaintiff's motion to deny defendant's costs without considering

the plaintiff's limited financial ability to pay an award of

costs and the chilling effect that a high award will have on

future civil rights litigants.   See id. (citing Stanley, 178 F.3d

at 1079).

In the present case, Plaintiff has not expressly argued

that the Court should deny or reduce Defendant's award of costs

based on her inability to pay or based on the award's chilling

effect.   She has, however, stated that she is sixty-seven years

old, has no assets, and that her only income is social security

payments.   [Mem. in Opp. to Motion and Bill of Costs, Decl. of

Audrey Kalai at ¶¶ 1-3.]   These representations are sufficient to

raise the issue whether the Court should deny or reduce

Defendant's costs based on Plaintiff's ability to pay and/or on

the chilling effect that a large award may have on similarly

situated plaintiffs.

Defendant argues that this Court should not find Plaintiff to be unable to pay an award of costs because her pending state action is a valuable asset.  The damages that Plaintiff seeks in that action are in the six-figure range. [Reply at 6.]  The Court, however, declines to consider the value of Plaintiff's claims before the state court because there has not been a determination on the merits of that case.  Although Plaintiff could recover a large award, she could also recover a small award, or she may not recover anything at all.

The Court finds that Plaintiff would not be able to pay a substantial award of costs and that a cost award of approximately $6,000.00 or $7,000.00[14] would seem high to most civil rights litigants and could have a chilling effect on future potential litigants.  Based on the Court's familiarity with the case, the Court is satisfied that there is sufficient evidence to overcome the presumption that the prevailing party is entitled to its full taxable costs.  Defendant is, however, entitled to some of its taxable costs.  Cf. Yasui v. Maui Elec. Co., 78 F. Supp. 2d 1124, 1130-31 (D. Haw. 1999) (although the defendants were entitled to in $9,258.14 costs, the court awarded costs of $5,000.00 because the plaintiff had an inoperable malignant brain

---

[14] This Court has found that $6,079.20 is taxable, but the ultimate award would likely be higher because this Court would otherwise be inclined to allow supplemental filings regarding the three depositions discussed *supra*.

40

tumor, could no longer work, and faced substantial medical costs).  The Court therefore RECOMMENDS that the district judge tax costs against Plaintiff and for Defendant in the amount of $2,750.00.  To the extent that this Court has reduced the recommended award, it is unnecessary to consider supplemental documentation regarding the depositions discussed *supra*.

## CONCLUSION

In accordance with the foregoing, this Court, acting as Special Master, HEREBY FINDS and RECOMMENDS that Defendant's Motion for Award of Attorneys Fees and Costs, filed September 3, 2008, be DENIED, and that Plaintiff's objections to Defendant's Bill of Costs, filed November 20, 2008, be GRANTED IN PART AND DENIED IN PART.  The Court RECOMMENDS that the district judge tax costs against Plaintiff and in favor of Defendant in the amount of $2,750.00.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, July 23, 2009.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States Magistrate Judge

**AUDREY KALAI V. STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES' HAWAII PUBLIC HOUSING AUTHORITY; CIVIL NO. 06-00433 JMS-LEK; REPORT OF SPECIAL MASTER ON DEFENDANT'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS AND PLAINTIFF'S OBJECTIONS TO DEFENDANT'S BILL OF COSTS**